**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Brenda K. Taite

     v.                                    Civil No.  06-cv-428-JM

Paula Morin

**O R D E R**

     This is a tort action that arose out of a deteriorating work relationship between the parties.  Plaintiff Brenda K. Taite ("Taite") used to work at the United States Department of Veterans Affairs, Veterans Health Administration and Medical Center ("VA") in White River Junction, Vermont, where she shared an office with defendant, Paula Morin ("Morin").  On the afternoon of September 26, 2006, while Taite was sitting at her desk at work, Morin struck Taite in the face with an office calendar she was delivering.  Based on that incident, Taite filed an action against Morin in Small Claims Court in Claremont, New Hampshire.

     On November 17, 2006, the United States Attorney for the District of New Hampshire ("US Attorney" or "US Attorney's Office") removed the action to this court, arguing the charges

arose under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), because the incident involved a federal employee acting within the scope of her employment while at work.  See Document no. 1.  The US Attorney has moved to substitute the United States for Morin as the defendant and to dismiss the action, based on the exclusive remedy for federal employees injured during the course of employment set forth in the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, etc. ("FECA").  See Document nos. 5 and 6.  Taite challenges the US Attorney's certification that Morin was acting within the scope of her employment and seeks to have the matter remanded back to state court.  See Document nos. 9 and 16.  To resolve the factual dispute regarding whether Morin was acting within the scope of her employment when the incident occurred, an evidentiary hearing was held on March 8, 2007.  See Gutiérrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995) (allowing district courts to review challenged scope of employment certifications).  As explained more fully below, I find that Morin was not acting within the scope of her employment when she struck Taite in the face with the calendar; therefore, I deny the US Attorney's motions to substitute it as the defendant and to dismiss this action (document nos. 5 and 6), grant Taite's

motion to remand (document no. 9) and order the clerk's office to close this case.

## Discussion

1. <u>Background</u>

In April 2006, Taite was hired as a claims assistant in the VA's Business Office, Patient Services Section.  Taite shared an office with Morin, who occasionally assisted Taite with her work. Although the women worked together, their relationship was somewhat difficult.  Once in June 2006, Taite complained about Morin to a supervisor; however, the two resolved the problem themselves and nothing further came of it.  Taite testified that during her tenure at the VA, she and Morin had become friends and frequently had discussed their personal lives.  By contrast, Morin testified that after the June incident she harbored ill feelings towards Taite and was only professionally cordial to her.  Both women agreed, however, that by September 2006 their relationship had strained, to the point where Morin basically had stopped talking to Taite.

The configuration of the office the two women shared is important to the resolution of this dispute.  The office was

split down the middle by a row of filing cabinets that ran about three quarters of the length of the room, to create two distinct office spaces within the one room.  The two halves of the room were connected where the filing cabinets ended, in the front area of the room nearest the hallway.  Along that near wall were two doors, which lead from the hallway into each half of the office. Standing in a doorway facing into the office, Taite's half was on the left and Morin's half was on the right side of the room. Each woman had a desk and two chairs on her half of the office. Morin had an L-shaped desk that sat along the side wall, then turned out into the room.  Taite's desk faced out towards the wall with the doors to the hallway.  Taite had a computer monitor in the middle of her desk and, next to it, an "in-box," that consisted of five boxes stacked on top of one another, in the left front corner of her desk, nearest the filing cabinets and Morin's half of the office.

On the afternoon of September 26, 2006, Taite was sitting at her desk concentrating on a claim she was processing.  She glanced up when Morin walked through the office door on Morin's side of the room and noticed something in Morin's hand, but resumed working.  In her peripheral vision, Taite saw Morin

4

approach her desk and suddenly throw the paper she was holding at Taite.  The paper was a calendar, that flew across Taite's desk, hit the bridge of her nose and smacked her glasses into her left eye.  Startled, Taite jumped up and asked Morin why she had done that.  As that reaction happened, Morin simply turned and walked over to her desk, where she sat down and began laughing with another VA employee, Jeffrey Bennett ("Bennett") who had been waiting for Morin by her desk.  Morin did not answer Taite.

Taite then called out to another employee whom she believed had witnessed the incident, to confirm what had just happened. She also asked Bennett whether Morin had just thrown the calendar at Taite, and he agreed.  Taite immediately contacted several VA supervisors, including the VA police to report the incident.  The police responded quickly, and took separate statements from Taite and Morin about the incident.

Both Morin and Bennett testified at the hearing and denied Taite's accusations.  Morin explained that, among other things, she is responsible for ordering and stocking supplies at work. On the day in question she was delivering calendars for the new fiscal year, which begins every October 1.  Although Morin corroborated Taite's story that she walked into the office

through the door on her side of the room and approached Taite's desk to deliver the calendar, Morin insisted that she carefully placed it into the top "in-box" of the five-story unit Taite had in the corner of her desk.  Morin also testified that after putting the calendar there, she returned to her side of the office to assist Bennett who had been waiting for her.  Morin explicitly denied having tossed the calendar either into Taite's in-box unit or onto her desk, and insisted that she carefully set it into the top in-box.  Morin, who is barely 5 feet tall, stated she was about an arm's length away from the desk and reached straight out to place the calendar in the box.  Morin also denied laughing at Taite's reaction, but admitted that she and Bennett exchanged looks of disbelief and confusion when Taite began accusing Morin of having thrown the calendar at her.

Bennett testified next and had difficulty remembering many details.  He appeared flushed and nervous.  Bennett initially could not recall whether he had confirmed that Morin had thrown the calendar, but then, after a considerable delay, changed his testimony to deny ever having agreed with Taite, or having laughed at her, about the incident.  Bennett's description of the office layout was inconsistent with both Taite's and Morin's

6

testimony, and his memory of how the incident occurred also was undermined by the testimony of both Morin and Taite.  He said Morin had entered the office through Taite's door and had placed the calendar somewhere on Taite's desk, but was not sure where and stated he had not been paying attention to what was happening on that half of the office.  He recalled clearly, however, how upset Taite was.  He described having been surprised by the entire incident.  When Taite began telephoning supervisors, he and Morin left the office.  Finally, Bennett testified that he was not aware of any ill-will or hard feelings between Morin and Taite.

   2.  <u>Analysis</u>

        **a.  Scope of Employment Certification**

   The critical issue in this dispute is whether Morin's conduct fell within the scope of her employment, as the defense asserts, or constituted an unexpected assault and battery, as plaintiff alleges.  The law clearly allows the US Attorney's office to remove the matter from state court to this court and to substitute the United States as the defendant, based on a certified representation that Morin was acting within the scope of her employment when the complained of incident occurred.  <u>See</u>

28 U.S.C. § 2679(d)(2) (requiring removal and substitution of the United States as defendant when employee defendant was acting within the scope of employment).  If, as a federal employee, Morin acted within the scope of her employment, then the law requires the claim be construed against the government, and the remedies made available under the FTCA preclude any further relief Taite might otherwise be able to obtain against Morin personally.  See 28 U.S.C. § 2679(b)(1); see also Aversa v. United States, 99 F.3d 1200, 1207–08 (1st Cir. 1996) (explaining how the amended FTCA made employees absolutely immune from suit for torts committed within the scope of employment).  This court's jurisdiction over the matter depends on Morin having acted within the scope of her employment.  See 28 U.S.C. § 1346(b)(1) (granting federal district courts exclusive jurisdiction of civil actions on claims against the United States for money damages for personal injury caused by the negligent or wrongful act of a government employee).

The FTCA allows injured parties to recover from the federal government for torts federal employees commit against them.  The law holds the United States liable for "tort claims, in the same manner and to the same extent as a private individual under like

circumstances," id. § 2674, "for injury or loss . . . caused by

the negligent or wrongful act or omission of any employee of the

agency while acting within the scope of his office or

employment." Id. § 2672.  Under Vermont law, which applies here

because the incident occurred in Vermont, see Aversa, 99 F.3d at

1208-09 (construing the FTCA to apply the law of respondeat

superior of the state where the alleged tortious conduct happened

and citing authority); see also 28 U.S.C. § 1346(b)(1) (looking

to the law of the place where the act occurred to determine

liability), conduct occurs within the scope of employment and,

therefore, is attributable to the employer when:

> (a) it is of the kind the servant is
>     employed to perform;
> (b) it occurs substantially within the
>     authorized time and space limits;
> (c) it is actuated, at least in part, by
>     a purpose to serve the master; and
> (d) in a case in which the force is
>     intentionally used by the servant
>     against another, it is not unexpectable
>     by the master.

Brueckner v. Norwich Univ., 169 Vt. 118, 122-23, 730 A.2d 1086,

1090-91 (1999) (quoting Restatement (Second) of Agency § 229(1)

(1958) to discuss how the doctrine of respondeat superior holds

an employer vicariously liable for an employee's torts).  Conduct

is not within the scope of employment if, among other things, it

is different in kind from that authorized by the employer.  <u>See</u>
<u>id.</u> (citing <u>Rest.</u> § 228(2)).

The evidence here fairly demonstrated that Morin's job
duties included stocking supplies.  The undisputed evidence also
showed that Taite was hit by a calendar which the VA regularly
used in its offices, and that is was near the start of a new
fiscal year when calendars would have been routinely distributed.
The record amply supports the conclusion, therefore, that Morin
was performing a duty she was employed to do, during regular
business hours, for purposes of satisfying the first three
elements of the "scope of employment" inquiry.

The fourth element, however, involving the intentional use
of force unexpected by the employer derails the government's
case.  Under no set of circumstances is it reasonable to assume,
nor did the evidence suggest, that the VA would have expected
Morin to hit Taite in the face with a calendar, or that the VA
would have authorized Morin to throw a calendar at another
employee, in the regular course of performing the job of stocking
office supplies.  While the evidence was contradictory about
whether or not Morin intended to throw the calendar at Taite,
after carefully considering all of the testimony, including the

statements on record, I find Taite to have been more credible
than Morin.

Morin's claim that she carefully placed the calendar in the
top slot of Taite's 5-unit inbox was not convincing.  Given her
admission that she was approximately an arm's length distance
from the desk, her short stature, and the undisputed height of
the inbox, it seemed highly unlikely that she, in fact, actually
set the calendar into the box as she claimed.  She admitted that
her relationship with Taite was strained and explained that she
knew Bennet was waiting for her, both of which support the
inference that Morin might have more casually tossed the calendar
up onto the top of the inbox.  Morin failed to offer any
explanation whatsoever as to why Taite perceived to have been hit
in the face with the calendar.  Her complete denial of the
incident just did not comport with common sense.

More importantly, I did not find Morin to be a credible
witness and, by contrast, found Taite to be credible.  As
mentioned above, Morin completely denied that she could have done
anything which might have caused Taite to have been startled by
the calendar.  Taite, on the other hand, conceded that she only
saw Morin approach from her peripheral vision.  She also stated

that she was shocked when the calendar hit her face, which
explained her repeated questions about what had just happened.
Although Taite testified that Morin and Bennett were laughing at
her reaction, Morin insisted she only looked at Bennett in
bewilderment.  Bennett's abrupt change in testimony about what he
could remember regarding how he responded to Taite was strikingly
disingenuous, which further undermined Morin's credibility.  In
yet another contrast, Taite testified she caused their problem
the previous June by mistakenly reporting Morin and was glad to
have "mended fences."  Morin's claim that she was never friendly
with Taite and had only a superficially cordial relationship with
her was undermined by Taite's detailed knowledge of private
aspects of Morin's personal life.  In short, Morin's testimony
was so consistently self-serving that it actually diminished her
credibility and undermined her version of the incident.

    The evidence supports the conclusion that Morin hit Taite in
the face with the calender.  While the contact might have been
the result of Morin negligently tossing the calendar rather than
intentionally aiming to hit Taite in the face, Morin would not
concede any carelessness or negiglence.  I decline to accept
Morin's claim that she in fact set the calendar in Taite's inbox.

Under these circumstances, with nothing to support an inference of an honest mistake or even excessive negligence, I find the VA could not have expected Morin to have intended to hit another employee with the calendars she was responsible for distributing. I further find that nothing in the offensive way Morin distributed the calendar served to advance the VA's interests, as the resulting animosity and employee upset represented by the instant lawsuit evidences.  See Brueckner, 169 Vt. at 122–23, 730 A.2d at 1090–91 (discussing how the employee's tortious conduct must advance the employer's interests for vicarious liability to attach).  Morin's intentional conduct cannot be construed as having been expected, in any manner, by the VA.

Accordingly, I conclude Morin was not acting within the scope of her employment when Taite was struck in the face with the calendar Morin was delivering.  Plaintiff's Motion to Challenge the US Attorney Scope of Employment Certification (document no. 16), therefore, is granted.  See Gutiérrez de Martinez, 515 U.S. at 434 (finding FTCA allows court review of certification); see also Vélez–Díaz v. Vega–Irizarry, 421 F.3d 71, 75 (1st Cir. 2005) (explaining provisional nature of scope of employment certification).

**b.  Removal, Substitution and Dismissal**

Having concluded that Morin was not acting within the scope of her employment, the disposition of the pending motions follows easily.  The FTCA explicitly exempts certain intentional torts from its waiver of the government's sovereign immunity, including the torts alleged here of assault and battery.  See 28 U.S.C. § 2680(h); but see Aversa, 99 F.3d at 1209 (explaining how the excepted intentional torts of § 2680(h) still may give rise to respondeat superior liability if they occurred within the scope of employment).  The alleged assault and battery here describe conduct that cannot be considered as expected by the VA when it employed Morin as a claims assistant.  Under Vermont law then, the charged conduct falls outside the scope of her employment and, therefore, is not actionable under the FTCA.  See id. (explaining when 28 U.S.C. § 2680(h) applies).  Because Morin acted outside the scope of her employment when she committed the charged assault and battery, she should be re-substituted as the defendant in this action.  See Vélez–Díaz v. Vega–Irizarry, 421 F.3d at 75 ("Where plaintiffs are able to show that the employees acted outside the scope of their employment, the employees may be re-substituted as the party defendants.").  Defendant's Motion to

Substitute the United States as Defendant (document no. 5) is, therefore, denied.

The US Attorney next argues this action should be dismissed, because claims for money damages asserted by federal employees against the United States must be made under FECA.  <u>See</u> 5 U.S.C. § 8116(c) (providing FECA as the exclusive remedy for claims against the United States for damages sustained during the course of employment); <u>see</u> <u>also</u> <u>Bruni v. United States</u>, 964 F.2d 76, 78 (1st Cir. 1992) (dismissing action for lack of jurisdiction where substantial question existed whether the complained of injury was covered by FECA).  FECA is a federal worker's compensation statute, for losses sustained by federal employees during the course of employment.  <u>See</u> 5 U.S.C. § 8102(a) (requiring the United States to compensate employees for personal injuries sustained while in the performance of his duties).  While the US Attorney correctly argues that this court would not have jurisdiction if the matter were to proceed against the United States, <u>see</u> <u>Bruni</u>, 964 F.2d at 80, FECA does not apply because the United States is not the defendant in this action, Morin is.  <u>Cf.</u> <u>id.</u> (United States Post Office allegedly responsible for dangerous work conditions that resulted in worker's death); <u>cf.</u>

<u>Pourier v. United States</u>, 138 F.3d 1267, 1268 (3rd Cir. 1998)
(FTCA claim against federal contractor and federal government is
preempted by FECA).  Under the circumstances here, where the
claim was not brought against the United States, nor can the
United States be substituted as the defendant for purposes of
determining liability for the alleged assault and battery, FECA
simply does not apply.  Accordingly, defendant's Motion to
Dismiss (document no. 6) is denied.

Finally, plaintiff has moved to remand this action back to
Claremont District Court.  Since this action involves a tort
action between private individuals who are both residents of New
Hampshire, and does not present any federal question, this court
lacks jurisdiction over the matter.  Plaintiff's Motion to Remand
the action to Small Claims Court in Claremont, New Hampshire
(document no. 9), therefore, is granted.

**Conclusion**

As explained in above, the pending motions are resolved as follows:

    Defendant's Motion to Substitute the United States
        of America as Defendant for Paula Morin,
        document no. 5, denied;

    Defendant's Motion to Dismiss,
        document no. 6, denied;

    Plaintiff's Motion to Challenge US Attorney Scope
        of Employment Certification for Paula Morin,
        document no. 16, granted;

    Plaintiff's Motion to Remand to Small Claims District
        Court in Claremont, New Hampshire,
        document nos. 9 & 38, granted.

The clerk is ordered to enter judgment consistent with these rulings and to close the case.

**SO ORDERED.**

                    /s/ James R. Muirhead
                    James R. Muirhead
                    United States Magistrate Judge


Date:  April 18, 2005

cc:  Brenda K. Taite, pro se
    T. David Plourde, Esq.

17